# Sanders v. Steinwehr Development Corporation

*Schaeffer, Purcell & Clouser* and *Bulleit & Bulleit,* for plaintiffs.

*Daniel E. Teeter,* for defendants.

SHEELY, P. J., October 9, 1963.—The question before the court is the right of plaintiffs to receive interest on the award to them under the facts of this case.

This action originated as a petition by plaintiffs to wind up and dissolve the respondent corporation for various reasons therein set forth. After the taking of considerable testimony, the parties entered into a stipulation on July 25, 1962, approved by the court, whereby the action was converted into an action for the determination of the fair value of the shares of stock of petitioners, as dissenting shareholders, under the provisions of section 515 of the Business Corporation Law of May 5, 1933, P. L. 364, as amended November 10, 1959, P. L. 1406, sec. 1, 15 PS §2852.515, "the proceedings to continue under the provisions of such statute".

On April 29, 1963, the court entered a decree, pursuant to the stipulation, finding the value of the shares

of stock as of July 31, 1962, and directing that judgments be entered against Steinwehr Development Corporation in favor of William S. Ayre in the sum of $45,600, and in favor of Francis L. Sanders in the sum of $30,400, and directing each of the parties to pay the compensation of the appraisers appointed by them, that all remaining costs be divided equally between them and that the judgment so entered should be payable only upon, and concurrently with, the surrender to the corporation of the certificates representing such shares.

The stipulation provided that "on valuation being set by the court, it is agreed that each petitioner shall be paid the sum of $5,000 within seven days of said final order and the balance within 60 days of said final order." Respondents were prepared to pay the amounts of the judgments in compliance with the stipulation, but a dispute then arose as to whether they should also pay interest on the judgments from the time of their entry. To overcome this difficulty, a further stipulation was entered into on June 26, 1963, and approved by the court, whereby the amount of interest from April 29, 1963, the date of entry of the judgments, to June 26, 1963, was deposited with Daniel E. Teeter, Esq., in escrow, pending the determination of this issue by the court. The stipulation provided that, in consideration thereof, petitioners would immediately satisfy their judgments and deliver to respondents all of their shares of stock in the corporation, and respondents would deliver to petitioners cashier's checks for the amounts of the judgments, and petitioners would mark as discontinued and ended all of the proceedings pending in this action.

" 'By the Act of 1700, sec. 2, 1 Sm. L. 7 [12 PS §782], judgments bear interest from the time obtained until time of sale or until satisfaction be made. By this act, interest is a legal incident of every judgment:

Cochran v. Cummings, 4 Dallas, 252; Commonwealth v. Miller, 8 S. & R. 452. It is as distinctly a substantive part of the debt as if the obligation to pay it was founded on a contract for interest.' Watson v. McManus, 223 Pa. 583, 588 72 A. 1066 (1909)": Koolvent Aluminum Awning Co. of Pittsburgh v. Pittsburgh, 192 Pa. Superior Ct. 650, 653 (1960).

This is based upon the general principle that interest is completely due whenever a liquidated sum of money is unjustly withheld, and the entry of a judgment is a liquidation of the debt and a determination that it is then due and payable. But, is the judgment in this case such a determination?

While the judgment in this case was entered under the provision of section 515 of the Business Corporation Law, it was so entered only pursuant to the stipulation of the parties entered into on July 25, 1962. That stipulation waived many of the formal prerequisites required under the terms of section 515 and provided that the court should appoint two appraisers under the provisions of that section, and that the proceedings should continue under the provisions thereof, and in the stipulation each party nominated, for the court's consideration, a firm of accountants as appraiser on its behalf. The statute provides that the court may, if it so elects, appoint one or more appraisers to recommend a decision on the question of fair value. The appointment of appraisers would be discretionary with the court. The stipulation further provided that such appointments should not be effective until August 21, 1962, to afford the parties an opportunity to arrive at a compromise fair value of the stock.

The stipulation provided the terms and conditions under which the business of the corporation should be conducted during the proceedings to determine the value of petitioners' stock, and petitioners subsequently availed themselves of their right as dissenting stock-

holders to have a receiver appointed for the corporation because of a violation of those terms and conditions.

The stipulation also provided that the docket costs should be equally divided between petitioners and respondents, the parties to each pay their respective expenses, including those of the appraisers. The statute provides that the court shall determine the costs and expenses of the proceedings and that such costs shall be assessed against the corporation, except that, under certain circumstances, the costs and expenses could be apportioned and assessed against any or all of the dissenting shareholders.

The stipulation further provided that on valuation being set forth by the court, each petitioner should be paid $5,000 within seven days of said final order and the balance within 60 days of said final order, and petitioners agreed to subordinate the judgments arising from the order of court to the lien of a proposed mortgage upon certain conditions.

It is significant that the stipulation made no provision for interest either before or after the entry of judgment. Section 515-G provides that the judgment shall make due allowance for any distribution to the shareholders between the day before the date of the vote on the plan and the date of their demand for the fair value of their shares and for such interest as the court may find to be fair and equitable in all the circumstances. The stipulation merely provided that, "on valuation being set by the court", payment should be made as therein provided.

The net effect of the stipulation, then, was to utilize the provisions of section 515 to carry out the compromise agreement of the parties, leaving to the court merely the duty of determining the valuation of the shares. The stipulation dispensed with the necessity of formal prerequisites; provided for the appointment of

two appraisers; nominated an appraiser for each side for the consideration of the court; provided when the appointment should be effective; determined the date as of which the valuation should be made; provided the conditions under which business should be conducted in the interim; provided for the disposition of costs and provided the terms of payment of the amount awarded. The judgment entered by the court, therefore, was actually entered pursuant to the stipulation of the parties which made no provision for the payment of interest on the award and which, in itself, provided that the amount of the award was not due immediately but that the final payment should be made within 60 days. We think these factors take the case out of the general rule that judgments should bear interest from the time obtained until satisfaction be made.

There is another reason why interest should not be allowed to petitioners. Section 515 provides that the judgment entered on the valuation shall be payable only upon, and concurrently with, the surrender to the corporation of the certificates representing such shares. The order of court entered in this case contained a similar provision. The interest of the dissenting stockholders in such shares and in the corporation did not cease until that time. It follows that the statute under which the judgments were entered does not contemplate immediate payment of the judgments, but payment only upon surrender of the certificates. There is no allegation of a tender of the certificates prior to June 26, 1963, and the stipulation of that date provided for their surrender at the time of payment of the principal and the satisfaction of the judgments.

Petitioners refer to Mortgage Building and Loan Association Case, 334 Pa. 81, 95, 98 (1939), in which it was held that a shareholder not assenting to the merger of a corporation and who obtained a judgment against the new corporation for the value of its stock

in the constituent association was entitled to receive interest on its judgment to the time of payment. It was there pointed out that such shareholders of constituent associations become, by the legal effect of the merger, creditors of the new corporation with the same creditor's claims on its assets enjoyed by general creditors of the corporation. In that case, plaintiff never was a shareholder in the new corporation, and by taking over the property of the constitutent associations, the merged corporation necessarily assumed the obligation of paying to dissenting plaintiff the value of its property immediately.

That case differs from the instant case in that, here, there was no new corporation formed, and petitioners remained shareholders in the old corporation until the judgments were paid and their certificates of shares were delivered and cancelled.

And now, October 19, 1963, the court determines that no interest is due to petitioners on the award to them in this case, and it is directed that the amount of such interest deposited in escrow be refunded to respondents. An exception to this decree is noted on behalf of petitioners.